29992. UNIVERSAL CREDIT COMPANY, for use, etc., *v.* SERVICE FIRE INSURANCE COMPANY.

DECIDED APRIL 22, 1943.

*Stafford Brooke, R. Carter Pittman,* for plaintiff.

*D. W. Mitchell,* for defendant.

SUTTON, J. Universal Credit Company, suing for the use of Clarence Lewallen, brought suit against Service Fire Insurance Company of New York, alleging substantially as follows: Previ-

ously to July 1, 1941, Clarence Lewallen purchased from a named person a certain described automobile as to which such third person held a policy insuring against collision damage, with a $50 deductible clause, loss, if any, to be adjusted with the assured, though to be paid, subject to all the conditions named in the policy, only to the Universal Credit Company for the account of all interests. The policy was duly transferred and assigned, with the consent of the insurer, to Clarence Lewallen, who thereafter paid all premiums on the policy. The written transfer was not delivered to him but was retained by the defendant, and in the petition it was called upon to have and produce the same upon the trial of the case. The policy, a copy of which was attached to the petition, provided, among other things: "This company may require from the assured an assignment of all right of recovery against any party for loss or damage to the extent that payment thereof is made by the company." It was alleged in the petition that on July 13, 1941, the said Clarence Lewallen sustained a total loss of the automobile in question in a collision with an automobile from a foreign State, the junk value of the damaged automobile being $100, and that previously to the collision it was reasonably worth $750; that after the collision Lewallen received $100 from a third party to apply against his loss, for which the defendant is given credit, "and now the defendant is indebted to the said Clarence Lewallen in the sum of $500 by virtue of the automobile after the collision, the $100 received from a third party and the $50 deductible sum expressed in the policy." It was alleged that Lewallen had complied with the terms and conditions of the policy, and that immediately after the collision notice was given to the defendant as provided in the policy and the defendant unconditionally denied liability upon the policy.

The defendant filed an answer denying liability for the reason that Lewallen had settled his entire loss with a third party and had received a sufficient amount to compensate him for any damage sustained to his automobile, and that inasmuch as the policy provided for subrogation in its favor for any amount it should pay Lewallen against a third party it would be inequitable to allow him to settle his claim with a third party for a nominal sum such as was alleged in the petition and then the defendant be held responsible for the balance of the claimed damage; that it was at all

times ready and willing to settle the claim of Lewallen in accordance with the provisions of the policy, thereby taking a subrogation over against the third party, and that Lewallen's refusal to accept any settlement from the defendant and settling with the third party denied it a substantial right and was a violation of the insurance contract.

The evidence upon the trial of the case showed that Lewallen was assigned the policy referred to in the foregoing statement of facts, with loss payable as there indicated, and also the following facts: About three weeks after the automobile was acquired by him and while Lewallen was driving it upon a public highway in this State, it was run into by another car being driven by one Fae Magnes and was so damaged that upon being sold, after the Universal Credit Company had taken possession of it, it brought only the sum of $65. Lewallen testified that it was worth $713 at the time of the collision, and afterwards was worth $50 to $65. The insurance was in force at the time of the collision, and the policy was introduced in evidence in the present suit and contained the provisions hereinbefore mentioned. Lewallen brought suit against the husband of the driver of the automobile which struck his, alleging that the car was being negligently driven by Fae Magnes as agent for him and under his direction and control, and sought damages for personal injuries and for the reduction in value of his automobile, alleging that before the collision it was reasonably worth $800 and afterwards was reasonably worth no more than $100 as junk, and judgment was prayed for $3000. Lewallen accepted a settlement from the tort-feasor without the case going to trial. He testified that he did not settle for damages to the car, but in evidence was a dismissal filed in the trial court reading as follows: "The above-stated case having been settled between the parties, the same is hereby dismissed, and the clerk is authorized to cancel the same from the dockets of said court on the payment of costs by the defendants." This dismissal was signed by his counsel, who state in their brief that he received $100 for damages to his automobile, and in the petition in the present case a similar admission is made, with the added statement that such amount should be applied to the credit of the defendant, together with the $50 deductible sum expressed in the policy.

The trial court directed a verdict for the defendant. The plain-

tiff filed a motion for new trial upon the usual general grounds and by amendment added a special ground that the court erred in directing the verdict for the defendant because it was "contrary to law and the evidence and that under the evidence a verdict in favor of the plaintiff was demanded." The court overruled the motion for new trial, and the exception here is to that judgment.

The insurance contract here involved is admittedly one of indemnity. It is shown by the evidence that the automobile of Lewallen was of the value of $713 before the collision and of the value of not more than $65 after the collision. In settlement of his suit against the tort-feasor $100 was allowed as damages to the automobile. It is contended by his counsel that he acted in good faith and upon their advice, and that the amount received being less than the actual amount of his loss he is entitled to maintain suit on the policy to recover the difference, less the $50 deductible amount expressed in the policy. The insurer contends that by the settlement with the tort-feasor he destroyed its right to subrogation and is precluded from the recovery sought. While the policy expressly provided for subrogation, the insurer, upon payment of the loss, would be entitled to such relief against the tort-feasor upon equitable principles independently of the policy provision. *Holcomb* v. *R. & D. R. Co.,* 78 *Ga.* 776 (3 S. E. 755); *Norwich Union &c. Society* v. *Bainbridge Grocery Co.,* 16 *Ga. App.* 432, 434 (85 S. E. 622); *Fireman's Fund Insurance Co.* v. *Thomas,* 49 *Ga. App.* 731, 734 (176 S. E. 690); 29 Am. Jur. 999, § 1335. The policy in the present instance did not, as was true in the *Thomas* case, supra, restrict the right to subrogation to an obligation to have such right assigned by the insured on receiving indemnification, and where, as ruled by this court, this right was waived by the insurer. The policy here provided: "This company may require from the assured an assignment of all right of recovery against any party for loss or damage to the extent that payment thereof is made by the company." Under the policy contract it was contemplated that in the event of damage to the automobile a settlement would be had between the parties thereto, in consequence of which the insurer would be entitled to subrogation of the insured's claim against the tort-feasor. It appears that within three weeks after Lewallen acquired the automobile, and while he was driving it upon a public highway, it was run into by another car and so damaged

that its value after the collision was only about $65; that he filed suit against the husband of the driver to recover damages for personal injuries and for the reduction in the value of the automobile. Though damage was sought for personal injury and for reduction in value of the car, there was but a single cause of action. *Georgia Ry. & Power Co.* v. *Endsley,* 167 *Ga.* 439 (145 S. E. 851, 62 A. L. R. 256). The settlement constituted a release of the tort-feasor, not merely as to the amount paid, but as to all liability because of the negligence complained of. *Pennsylvania Casualty Co.* v. *Thompson,* 130 *Ga.* 766 (61 S. E. 829). Neither in proceeding against the tort-feasor nor in making settlement with him did Lewallen consult the insurer. It was afforded no opportunity, so far as the record discloses, to indemnify the insured and obtain from him an assignment of his right of action. Clearly the insured by his premature settlement with the tort-feasor destroyed the insurer's right of subrogation.

In 26 C. J. 459, § 623, it is said: "It is well settled that if the insured settles with or in any way releases the third person from his liability for the loss, before payment thereof by the insurer, the latter's right to acquire subrogation against such third person is destroyed, and to that extent the insurer is relieved from liability on the policy." In 6 Blashfield Cyclopedia of Automobile Law, 504, § 4181, it is stated: "While subrogation, strictly speaking, can logically arise only after a payment by the insurer of the claim for injury to or loss of the automobile, still an additional and supplementary rule exists, even where the policy expressly mentions subrogation and provides for its effectuation by assignment of the insured's claim against the wrongdoer to the insurer upon or after payment by the latter, that any payment as damages received by the insured from the wrongdoer before settlement with the insurer, reduces by operation of law the liability of the insurer pro tanto, and where the insured releases his right of action against the wrongdoer before settlement with the insurer, that release destroys, by operation of law, his right of action on the policy." In referring to this general rule it was said in Auto Owners' Protective Exchange v. Edwards, 82 Ind. App. 558 (136 N. E. 577): "The wisdom of that rule is apparent. To permit the insured to receive payment from both the wrongdoer and the insurer would be to give him double compensation for his loss. The wrongdoer cannot be

permitted to shield himself on the theory that the loss is covered by insurance, for the contract of insurance was not made for his benefit. Manifestly it would be unjust to compel the insurer to suffer the consequences of the wrongful act of another." For other cases applying the rule that settlement by the insured with the wrongdoer destroys the insurer's right of subrogation and defeats recovery against the insurer, see Bloomingdale v. Columbia Insurance Co., 84 N. Y. Supp. 572; Maryland Motor-Car Insurance Co. v. Haggard (Tex. Civ. App.) 168 S. W. 1011; Farmer v. Union Insurance Co., 146 Miss. 600 (111 So. 584). .

It would be unconscionable, we think, to hold that one indemnified under a policy of insurance against automobile collision could, where a loss has occurred, be at liberty to stand aloof from the insurance company, withholding all information as to such loss, giving it no opportunity to adjust his claim, and settle with the tortfeasor for a sum bearing no just relation to the loss, and then call upon the insurer to pay him the difference between what he conceives to be his loss and the amount he has received from the third person. In short, to sanction such recovery would be to allow him compensation twice for the one cause of action. The precise question here raised has not heretofore been presented to the appellate courts of this State, but we have no hesitancy in adopting as sound and controlling the above-quoted authorities as precluding the right of the insured to recover from the insurer under the facts of this case. Assuming but not deciding that the special ground of the motion for new trial assigning error on the direction of the verdict be a sufficient and valid assignment in law in this respect, as to which the plaintiff and the defendant urge contrary arguments, it follows from what is said above that the trial court did not err in directing the verdict for the defendant.

One or two other contentions of the plaintiff may be noted. It is contended that, in order that the settlement by the insured with the wrongdoer may operate to discharge the insurer from liability on the ground that subrogation was thereby prevented, the burden was upon the insurer to show that there was a liability on the part of such third person. The insured testified that his loss was occasioned by his automobile being run into by another car on a public highway. He admitted having filed a suit against a named person, charging that the driver of the car which ran into his automo-

bile was the agent of such person, acting under his control and direction, and that such alleged wrongdoer made a settlement with him. As between the parties this sufficiently established the liability of the third person.

It is also urged by the plaintiff that as there prevails in this State a rule known as the comparative negligence doctrine, and Lewallen, acting in good faith and with such rule in mind, might be said to have settled with the tort-feasor for less than the amount of his actual loss, and was only partly indemnified from an independent source, there is no reason why the insurer should not complete the indemnification. The answer to that argument is to be found in the fact that it is not made to appear that the wrongdoer filed any answer alleging negligence on the part of Lewallen, and certainly his petition in the suit against him, a copy of which was introduced in evidence, does not admit contributory negligence. Consequently, this court can not assume the existence of such a fact, especially when under the law it is required that such issue of contributory negligence be made to appear from the defendant's pleadings or by the evidence. See *Lamon* v. *Perry, 33 Ga. App.* 248 (125 S. E. 907); *Georgia Power Co.* v. *Jones, 54 Ga. App.* 578, 586 (188 S. E. 566). The court did not err in overruling the plaintiff's motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., concurs in the judgment.*